CHARLES W. BRAITHWAITE *et al.*

*v.*

WILLIAM P. HENNEBERRY.

*Opinion filed June 14, 1906.*

1. EQUITY—*equity may retain jurisdiction to grant legal remedies.* A court of equity which has acquired jurisdiction over a cause requiring any equitable relief may retain jurisdiction for all purposes so as to do adequate and complete justice between the parties, even though it thereby establishes legal rights and provides legal remedies otherwise beyond the scope of its authority.

2. SAME—*whether equity will retain jurisdiction is a matter of sound discretion.* Whether a court of equity will retain jurisdiction of a cause to grant legal remedies is a matter for the exercise of sound discretion which is subject to review, and such discretion will ordinarily be exercised in favor of retaining the jurisdiction.

3. SAME—*when court does not err in not retaining jurisdiction to assess damages.* Where the only prayer respecting damages in a bill to reform a mistake of description in a lease and contract and to decree specific performance of the contract is that the court shall assess complainant's damages in case the defendant refused to obey the decree for specific performance, it is not error for the court, upon reforming the mistake but refusing to decree specific performance, to also refuse to retain jurisdiction of the cause to assess complainant's damages, no other ground appearing which would justify an assessment of damages.

4. COSTS—*when complainant should pay costs.* Complainant in a bill to reform an alleged mutual mistake of description of which both parties were ignorant should be decreed to pay the costs, where, so far as appears, the bill was filed without any necessity against the defendant, who might have been willing to correct the mistake had he known of its existence.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JAMES J. BARBOUR, and FURBER & WAKELEE, for appellants.

SEARS, MEAGHER & WHITNEY, (JAMES F. MEAGHER, and JESSE J. RICKS, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The superior court of Cook county overruled the demurrer of appellee to the amended bill of appellants asking the court to correct a mistake in matter of description in a lease, which included a contract, executed by said parties, and to enforce specific performance of the contract as reformed; and in the event that appellee should refuse to obey the order of the court for the performance of the contract, appellants should be awarded compensation for their outlays and such damages as they had suffered and would thereafter suffer, and that a mortgage given to secure the performance of the lease on their part should be canceled. Appellee elected to stand by his demurrer and then in open court released the mortgage, whereupon the court reformed the lease and awarded costs to appellants but refused any further relief. Appellants obtained the relief they asked for so far as the reformation of the lease was concerned, and appellee released the mortgage, but appellants excepted to the refusal of the court to grant further relief and appealed to the Appellate Court for the First District. Errors and cross-errors were assigned and the Appellate Court affirmed the decree except as to costs, but required appellants to pay the costs in the superior court as well as the Appellate Court. From the judgment of the Appellate Court appellants have brought the case by a further appeal to this court.

The facts stated in the amended bill and admitted by the demurrer are substantially as follows: The defendant, being the owner of two lots in Chicago, leased them on July 28, 1903, to complainants for twenty years, from November 1, 1903, to November 1, 1923. The property leased was in range 14 but by mistake was described as being in range 13.

The defendant was to remove the old structure on the property and to erect thereon a modern sprinkled mill building covering the entire land, six stories and a basement in height, to cost not exceeding $60,000 and to fulfill certain requirements. The plans and specifications were to be submitted to the complainants and changed or altered as they might require, provided the cost of the building and equipment should not exceed $60,000. The rent was to be $608.34 per month, and if the building was not completed until after November 1, 1903, the rent was to be rebated until it should be completed. The defendant agreed to proceed promptly to erect the building and to complete it on or about December 15, 1903, provided there was no interference or delay on account of strikes or the act of God. Five hundred dollars was to be paid, and was paid, at the execution of the lease, and the complainant Charles W. Braithwaite and his wife executed a mortgage to secure a performance of the covenants of the lease for the first seven years of the term. The defendant had plans drawn for the building, which were approved by the complainants, but the defendant represented that the building would cost more than $60,000. Complainants consulted another architect, who agreed to furnish plans and specifications and superintend the erection of the building at a cost not to exceed $60,000. Bids were obtained and opened on or about November 11, 1903, offering to construct the building for $54,666. Defendant made no move toward entering into a contract for the building, but did not reject the bids and requested the architect to hold them open until he was ready to proceed. Complainants frequently demanded that defendant proceed, but upon one pretext or another he postponed or delayed action. December 15, 1903, passed and no move was made toward the construction of the building, and the delay was not caused by strikes or the act of God. The bill was filed December 24, 1903, and alleged that one of the complainants desired to use a part of the building, and its then existing lease expired May 1, 1904; that the defend-

ant knew that it was the purpose of the complainants to lease a large portion of the premises; that the rent season in Chicago begins on May 1, and unless the building should be completed prior to May 1, 1904, the complainants would be greatly damaged and inconvenienced; that the performance of the covenants and agreements of defendant would result in great gains and profits to the complainants, which, according to the rental value, would amount for the period of twenty years to $100,000, and that the failure to erect the building was wholly due to neglect, delay and inaction of the defendant. Complainants paid $500 when the lease was executed. Braithwaite executed the mortgage, and complainants obtained a guaranty policy on the mortgaged premises and paid therefor $150. The defendant never delivered possession of the premises to complainants.

The superior court overruled the demurrer to the amended bill and reformed the lease by correcting the error as to the range, and it is now conceded that the contract was not of such a nature that the court could grant the prayer for specific performance of it, but it is contended that the court erred in not retaining the cause for the assessment of damages to the complainants. The complaint as to the Appellate Court is, that upon the affirmance of the decree the court required the complainants to pay the costs in the superior court.

It is the rule that when a court of equity acquires jurisdiction over a cause requiring any equitable relief, the court may retain the cause for all purposes and establish legal rights and provide legal remedies which would otherwise be beyond the scope of its authority. In such a case the court will not ordinarily limit itself to the execution of partial justice and turn the parties over to a court of law, but will go on and dispose of all the matter at issue so as to do adequate and complete justice between all the parties. Whether the court will so proceed to a final determination of legal rights is a matter for the exercise of sound discretion, which is subject to review, and which will ordinarily be exercised by re-

taining the cause and granting any necessary legal remedies. In this case we think the superior court did not err in refusing to retain the cause for the assessment of damages, because of the nature of the bill and the want of necessary averments upon which to base such action. The prayer of the bill was that the court should enforce the specific performance of the contract as reformed, and the only prayer for damages was, that if the defendant should decline or refuse to obey the order of the court the complainants might be awarded compensation and damages and have the mortgage released, and have a lien on the premises for their outlays and damages. The bill was drawn upon the theory that the contract was still in force, and it prayed for a specific performance of the contract. It alleged that the defendant had not complied with complainants' request to proceed, but had on one pretext or another postponed action; that the failure to erect the building was wholly due to such neglect and inaction, and that the defendant had requested the architect to hold the bids open until he should be ready to proceed with the erection of the building. It was not alleged that the defendant had rescinded the contract or abandoned it or refused to perform it, and the complainants did not ask the court for a rescission and an award of damages, but asked for specific performance. There is no averment under which damages could be recovered for a breach of the entire contract, unless there should be a refusal to comply with the decree for specific performance. There was a general prayer for relief, and if a bill contains averments of specific facts which authorize the granting of certain relief it may be granted under a general prayer. In this case the building was to have been completed by December 15, 1903, and the bill was filed nine days afterward. It alleged that the rent was to be rebated until the completion of the building; that the rent season commenced on May 1; that if the building should not be erected by May 1, 1904, complainants would be greatly damaged; that the lease of one of the complain-

ants expired at that time, and that said complainant desired to remove to new quarters on that date. The only covenant that had been broken was the covenant to complete the building by December 15, 1903, and the most that the court could have done would have been to have allowed damages for the breach of that covenant if any had been averred. It would have been just as consistent with the averments of the bill to say that complainants suffered no damage as to say that they suffered any. There was no averment that defendant ever refused to erect the building, but counsel say that when he released the mortgage in open court that act showed that he did not intend to perform the contract and authorized the court to assess damages. We can only regard that act as showing a willingness of the defendant to release the mortgage or that he did not care to retain it, and we do not see how the act could affect or change the issues. We do not see upon what theory the court could have assessed damages so as to do adequate and complete justice between the parties, and think the court did right in refusing to retain the cause for that purpose and leaving the parties to their legal remedies.

Appellee has assigned a cross-error that the superior court erred in overruling his demurrer and reforming the lease. The bill contained no averment that the defendant, who was competent to correct the mistake, had been requested or had an opportunity to do so, and no excuse was offered for the failure to make such request. The bill alleged that the mistake was mutual and the parties were ignorant of it, and it is insisted that in a case where no equitable relief is demanded except the correction of a mistake, there must first be a demand and refusal to correct it, or the bill must show facts from which it appears that a demand would be useless or impossible. Counsel, however, say that they do not want the cross-error passed upon unless we should hold that the case was one where the court ought to have assessed damages. As we have decided that the court

did not err in that particular we do not consider or decide the question raised by the cross-error. As to the costs, we are of the opinion that, regardless of the question whether one party to a mutual mistake may, upon discovering it, resort to a court of equity and subject the other party to the expense and inconvenience of a suit without advising him of the mistake or giving him an opportunity to correct it, the Appellate Court did not err in requiring complainants to pay all the costs. So far as appears, the bill was filed without any necessity against a party to a mutual mistake who may have been entirely willing to correct it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*